**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **GARDNER GROUP, LLC,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
|     v. | ) |
| | )   **Case No. 15-9934** |
| **COMMONWEALTH LAND TITLE** | ) |
| **INSURANCE COMPANY, et al.,** | ) |
| | ) |
|     **Defendants.** | ) |
| | ) |

**MEMORANDUM AND ORDER**

Plaintiff originally filed this action in the District Court of Johnson County, Kansas seeking redress for breach of contract, negligent misrepresentation and negligent nondisclosure against defendant Commonwealth Land Title Insurance Company ("Commonwealth.") Commonwealth subsequently removed the action to this court based upon diversity of citizenship pursuant to 28 U.S.C. §§ 1332(a) and 1441(b). However, plaintiff filed a Second Amended Petition adding claims against two additional defendants, SMS Ventures, Inc. ("SMS") and Randall Sparks, both residents of Gardner, Kansas. (Doc. 19.) Plaintiff also filed a Motion for Remand to State District Court and For Stay of Scheduling Order (Doc. 20). SMS and Sparks filed an opposition to the motion to remand (Doc. 26) and a motion to dismiss (Doc. 25) alleging that plaintiff's amended petition fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).

**I.**    **Factual Background**

On May 29, 2007, SMS sold a tract of land to plaintiff that was located near the end of the runway of the Gardner Municipal Airport. The real estate contract, dated September 8, 2006, was

originally between SMS and David M. Johnson and/or his assigns.  Mr. Johnson assigned the contract to plaintiff.  SMS executed a warranty deed purportedly conveying title to plaintiff.

Commonwealth issued a title insurance policy dated May 31, 2007, insuring the land purchased by plaintiff.  Plaintiff intended to develop the land for commercial use.

In 2014, plaintiff obtained a contract to sell a portion of the land.  However, the contract was canceled after plaintiff was notified about an encumbrance on the title to the land.  The City of Gardner, Kansas created this encumbrance when it enacted Ordinance No. 2149 in May 2005, after defendant Sparks submitted an application for rezoning of the land.  Ordinance No. 2149 is an avigation easement which limited the height of buildings at the end of the runway—specifically providing "[t]he 20 to 1 approach slope to the Gardner Municipal Airport runway shall remain clear." The City of Gardner recorded the ordinance in the office of the Register of Deeds of Johnson County, Kansas and published it in The Gardner News in May 2005.

In Schedule B of its title insurance policy, Commonwealth listed 12 exceptions from coverage, including other easements to the City of Gardner.  But Ordinance No. 2149 was not listed nor was it noted anywhere in the title insurance policy issued to plaintiff.

Around February 19, 2015, plaintiff made a demand upon Commonwealth for its loss and damage under the policy.  Commonwealth denied coverage on April 24, 2015.  Plaintiff claims that Commonwealth failed to disclose the existence of the encumbrance, which was in existence at the time the title insurance contract was executed.  Plaintiff also claims that the encumbrance rendered the land unmarketable and Commonwealth breached its contract when it refused to pay for plaintiff's loss.

In its amended complaint, plaintiff alleges that SMS and Sparks, as its officer, failed to disclose the easement on the land at the time of purchase.  Plaintiff claims that SMS issued a Seller's Affidavit

and swore that there were no encroachments upon the land nor did SMS have any knowledge of any rights of possession by another party.  Plaintiff seeks damages that exceed $75,000.

## II. Legal Standards

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Federal courts have original jurisdiction over civil actions where the amount in controversy exceeds $75,000 and each defendant is a resident of a different state than each plaintiff.  28 U.S.C. § 1332(a); *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  However, "[r]emoval jurisdiction over diversity cases is more limited than jurisdiction over diversity cases originally brought in federal court because removal based on diversity is available only if none of the defendants is a citizen of the state in which the action is brought."  *Wolf Creek Nuclear Operating Corp. v. Framatome ANP, Inc.*, 416 F. Supp. 2d 1081, 1085 (D. Kan. 2006); *see also* 28 U.S.C. § 1441(b) (providing that an action based on anything other than original jurisdiction is only removable "if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.").

Because this is a court of limited jurisdiction, the court must refrain from exercising jurisdiction unless it is certain that such jurisdiction has been granted by Congress.  *See Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1182 (10th Cir. 2000) ("In light of the limited subject matter jurisdiction granted to the federal courts by Congress, we have a duty to satisfy ourselves that jurisdiction is appropriate.").  The removing defendant carries the burden of demonstrating that removal was proper and that the federal court has original jurisdiction.  *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).  Federal removal jurisdiction is statutory in nature, and

the governing statutes are to be strictly construed. *Shamrock Oil & Gas v. Sheets*, 313 U.S. 100, 108–09 (1941); *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 814 (1986). It is well-settled that the presumption is against removal jurisdiction. *Coca-Cola Bottling of Emporia, Inc. v. S. Beach Beverage Co.*, 198 F. Supp. 2d 1280, 1285 (D. Kan. 2002). Doubtful cases must be resolved in favor of remand. *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982).

## III. Analysis

Plaintiff is a Kansas limited liability company, with its principal place of business in Kansas. Plaintiff's three members are individuals whose principal residence is in Lenexa, Kansas. Commonwealth is a Nebraska corporation, with its principal place of business in Nebraska and Florida.

At the time of removal, Commonwealth was the sole defendant. However, Commonwealth later filed a designation of comparative fault and identified SMS and its officers, directors, and stockholders as a party whose fault was to be compared in plaintiff's case.

Plaintiff filed an amended petition and claimed breach of contract, fraudulent concealment, and negligent nondisclosure against SMS and Sparks. SMS is a Kansas corporation with its principal office in Gardner, Kansas. Sparks is an officer and resident agent for SMS whose address is also in Gardner, Kansas.

The citizenships and residencies of each party are not in dispute. As plaintiff and SMS and Sparks are residents of Kansas, complete diversity is lacking. However, SMS and Sparks claim that they are fraudulently joined and oppose plaintiff's motion for remand.

### A. Fraudulent joinder

Fraudulently joined parties should be ignored for the purposes of assessing whether removal is permitted. *See Dutcher v. Matheson,* 733 F.3d 980, 987–88 (10th Cir. 2013). To establish fraudulent joinder, the removing party must demonstrate either: "(1) actual fraud in the pleading of jurisdictional

-4-

facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* at 988.  Defendants oppose remand and bear a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in plaintiff's favor.  *Id.*  To prove their allegation of fraudulent joinder, SMS and Sparks must demonstrate that there is no possibility that plaintiff would be able to establish a cause of action against them in state court.  *See Montano v. Allstate Indem.*, No. 99-2225, 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. Apr. 14, 2000).  The court must decide if plaintiff's amended complaint states a cause of action against SMS and Sparks.

### B. Rule 12(b)(6)

To the extent this court has subject matter jurisdiction, the court must determine whether plaintiff's action is subject to dismissal because it fails to state a claim upon which relief could be granted.  The court grants a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  However, the Tenth Circuit has applied a stricter standard in a removal case than that for dismissing a claim under Fed.R.Civ.P. 12(b)(6).  *See Montano*, 2000 WL 525592 at *2.  Absent fraudulent joinder, determination on the merits should be left to the state court where the action was commenced.  *Id.*

Although the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008).  The allegations must contain facts sufficient to state a claim that is plausible—not merely conceivable.  *Id.*  "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 556 U.S.

662, 681 (2009).  The court construes any reasonable inferences from these facts in favor of the plaintiff.  *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

Generally, a court does not look beyond the face of a complaint when analyzing a Rule 12(b)(6) motion.  *MacArthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2001).  There are two exceptions to this rule.  *Larson v. Safeguard Properties, Inc.*, 379 F. Supp. 2d 1149, 1152 (D. Kan. 2005).  First, the court may consider the parties' argument contained in their memoranda concerning a motion to dismiss.  *Id.*  Second, if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.  *Id.*

As mentioned above, plaintiff makes claims against SMS and Sparks for breach of contract, fraudulent concealment, and negligent nondisclosure and/or misrepresentation.  If the court finds that even one cause of action is valid, the case should be remanded.

### C.  Fraudulent concealment

A court sitting in diversity will apply the forum state's substantive and choice of law provisions.  *Kipp v. Myers*, 753 F. Supp. 2d 1102, 1107 (D. Kan. 2010).  "Kansas uses the rule *lex loci rei sitae* which provides for the use of local law to determine the rights and obligations of the parties to real property."  *Id.*  Thus, the court will apply Kansas law.

Kansas has adopted the Restatement (Second) of Torts § 550 (1976), which defined fraudulent concealment as:

> "One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering."  *Hanson v. Hackman Corp.*, No. 98,073, 192 P.3d 1130, 2008 WL 4471679, * 5–6 (Kan. Ct. App. Oct. 3, 2008).

To establish fraudulent concealment or fraud by silence, plaintiff must show the following elements: (1) SMS and Sparks had knowledge of material facts which plaintiff did not have and could not have discovered by the exercise of reasonable diligence; (2) SMS and Sparks were under an obligation to communicate the material facts; (3) they intentionally failed to communicate the material facts; (4) plaintiff justifiably relied on SMS and Sparks to communicate the material facts; and (5) plaintiff sustained damages as a result of their failure to communicate. *See Stechschulte v. Jennings*, 298 P.3d 1083, 1097 (Kan. 2013).

### a. Knowledge of material fact

Plaintiff refers to SMS's affidavit that it prepared for plaintiff's lender, which states SMS swore that there were no encroachments upon the property or other facts by which title to or possession might be questioned, and that SMS did not have any knowledge of any rights of possession by any other party.

"A fact is material if it is one to which a reasonable man would attach importance in determining his choice of action in the transaction in question. *Boegel v. Colorado Nat'l Bank of Denver*, 857 P.2d 1362, 1367 (Kan. Ct. App. 1993). Plaintiff purchased the land to develop it for commercial use. Plaintiff claims that it would not have purchased the land had it known of the easement.

Section 3 of the parties' real estate contract provides:

"Evidence of Title: Seller shall furnish buyer an owner's indemnity title insurance policy in the amount of the purchase price from a company authorized to insure titles in this state, insuring a merchantable fee simple title in the buyer's name as of the date of recording of the deed. Seller shall within ten days after execution of the contract deliver a title commitment to the buyer. Buyer shall notify seller in writing of any valid objections to the title within ten days after receipt of said title commitment and seller shall then have a reasonable time but not to exceed sixty days within which to rectify the title and in such cases the time of closing shall be extended accordingly. In the event title objections cannot be satisfied within sixty days, buyer may elect to waive such objections." (Doc. 26-1, 5.)

Plaintiff claims that SMS and Sparks had knowledge of the easement when they sold the land, but neglected, failed, and refused to disclose the easement to plaintiff.  Sparks is an officer and shareholder in SMS's corporation and plaintiff argues that his knowledge is imputed to SMS, the seller under the contract.  Plaintiff further alleges that SMS and Sparks breached the contract when they failed to furnish plaintiff with an owner's indemnity title policy insuring a merchantable fee simple title in plaintiff's name as of the date of the recording of the deed.  Specifically, although SMS did provide a title policy, it failed to note the existence of the avigation easement on the land.

      b.  **Duty to disclose**

SMS and Sparks claim that they did not have a duty to disclose the easement and therefore, plaintiff cannot show that nondisclosure was fraudulent.

Kansas courts have held that the duty to disclose arises in two situations: 1) a contracting party that has superior knowledge, or knowledge that is not within the reasonable reach of the other party, has a legal duty to disclose information material to the bargain; and 2) parties in a fiduciary relationship must disclose material information to one another.  *Kestrel Holdings I, L.L.C. v. Learjet Inc.*, 316 F. Supp. 2d 1071, 1078 (D. Kan. 2004).  A contracting party has a duty to disclose material facts if it "knows that the other is about to enter into the transaction under mistake as to such facts, and that the other, because of relationship between them, the customs in trade, or other objective circumstances, would reasonably expect disclosure of such facts." *Boegel*, 857 P.2d at 1365.  The duty arises at the time of contracting. *Kestrel Holdings I, L.L.C.*, 316 F. Supp. 2d at 1078.

Plaintiff does not claim that SMS and Sparks owed it a fiduciary duty.  Instead, plaintiff claims SMS and Sparks had an affirmative duty to disclose the easement since they had actual knowledge of it and knew or should have known that plaintiff had no actual knowledge of the easement.  The parties were in a transactional relationship, which resulted in SMS's duty to provide merchantable fee simple

title to plaintiff if possible.  SMS also was to provide plaintiff with a title commitment and title insurance.  While SMS did not perform the title search, it did have knowledge of the easement on the land.  Plaintiff performed a physical examination and reviewed the title commitment and insurance policy—none of which identified the easement.  And while plaintiff could have paid for or conducted its own independent title search, it was not required by the contract or law.

The court recognizes that "mere silence or failure to disclose does not by itself constitute fraudulent concealment."  *Freebird, Inc. v. Merit Energy Co.*, 883 F. Supp. 2d 1026, 1036 (D. Kan. 2012).  However, plaintiff presents a valid argument that SMS and/or Sparks received the title commitment lacking identification of the easement, yet did nothing to correct it or disclose the existence of the easement after Commonwealth failed to include it.  *See id.* ("[A]ny statement, word, or act which tends to the suppression of the truth renders the concealment fraudulent . . . .")  SMS and Sparks' actual knowledge of the easement—and failure to correct the title commitment or disclose the easement—is what gives rise to the claim.

### c. Intentional failure to communicate

Plaintiff claims that Sparks had actual knowledge of the easement, but intentionally failed to disclose it when he had a duty to do so.  It is undisputed that SMS and Sparks had knowledge of the easement prior to the sale of the land, yet failed to disclose this fact to plaintiff.  At this stage, the court presumes plaintiff's pleadings as true.  *See Tal*, 453 F.3d at 1252 (the court construes any reasonable inferences from the facts in favor of the plaintiff).

SMS and Sparks argue that they could not fraudulently conceal a public ordinance because Kansas courts charge parties with constructive notice of public records.  They cite Kan. Stat. Ann. § 58-2222 which states that register of deeds filings impart notice to all persons of the contents thereof.  However, the Tenth Circuit recently held that "recording acts are not intended as protection for

fraudulent liars. Their purpose is to afford protection to persons who buy a recorded title against those who, having obtained a paper title, have failed to record it. The purpose of the [recording] statutes is fully accomplished without giving them a collateral effect that protects those who make misrepresentations from liability." *Stewart Title Guar. Co. v. Dude*, 708 F.3d 1191, 1195 (10th Cir. 2013) (citing Restatement (Second) of Torts § 540, cmt. b)

SMS and Sparks argue that plaintiff fails to state a claim because there must be some affirmative act to prevent knowledge of the fact, some affirmative act of concealment, or some misrepresentation to exclude suspicion and prevent injury. Plaintiff does not allege that SMS or Sparks actively did anything to prevent plaintiff from learning about the easement. But plaintiff claims that SMS and/or Sparks had a duty to disclose the easement. SMS and Sparks acknowledge that they paid for the title insurance policy and delivered the title commitment to plaintiff. SMS and Sparks therefore had an opportunity to review the title commitment and disclose Commonwealth's failure to find the easement in the title search. SMS and Sparks' awareness of the easement gave them superior knowledge of a material fact. Plaintiff could not have reasonably discovered this material fact by doing an inspection of the property. Nor were they under any obligation to do an independent record search. Defendants failed to disclose this fact to plaintiff even though they knew about the easement.

    d. **Reliance**

"A recipient of a fraudulent misrepresentation is justified in relying upon its truth without investigation, unless he knows or has reason to know of facts which make his reliance unreasonable . . . The test is whether the recipient has information which would serve as a danger signal and a red light to any normal person of his intelligence and experience." *Hanson*, 2008 WL 447167 at * 11 (citation omitted)

Plaintiff claims that it relied on SMS and Sparks' fraudulent concealment and nondisclosure of the easement and purchased the land because it was not aware of the easement. Plaintiff notes that SMS's president executed an Affidavit of Seller indicating that he had no "knowledge of other discrepancies, overlaps, encroachments by improvements, disputes with owners of adjoining property or with utility companies, nor other facts by reason of which title to or possession of the real estate might be questioned or disputed."

SMS and Sparks claim that they bargained for limited liability because plaintiff expressly agreed to "waive[ ] any requirement regarding seller's disclosures as buyer is buying the property in its present condition and buyer has inspected the property and knows of the defects, if any." (Doc. 26, at 17.) SMS and Sparks argue that the contract makes clear that the land was conveyed "in an 'as is' condition . . . subject to recorded restrictions, right of ways, easements, and C-2 zoning, on the following terms and conditions." Because of these provisions, defendants argue that plaintiff's claim nullifies the limited liability for which it bargained for and plaintiff contractually assumed a duty to inspect and expressly "waived" any disclosure requirements.

Defendants cite *Boegel v. Colorado Nat'l Bank of Denver*, as authority for their argument that they contracted for limited liability and did not breach their duty to disclose. In *Boegel*, a buyer contracted to inspect and purchase a piece of land "as is" and the seller specifically made no warranties. *Id.* at 1364. The seller knew the irrigation system to be defective, but the buyer did not conduct a reasonable inspection; consequently, he did not find the material defects. *Id.* at 1364–65. The buyer claimed fraudulent concealment and argued that the seller had a duty to disclose the defective irrigation system. *Id.* at 1363. The court held that the seller had no duty to the buyer because the buyer was an experienced farmer and he failed to reasonably inspect the irrigation system prior to closing. *Id.* at 1365 (citing *Green v. Geer*, 720 P.2d 656, 659 (Kan. 1986)).

The court agrees that the contractual provisions provide that the land was sold "as is" and plaintiff agreed to inspect the property—and did so—and waived disclosures. But the "as is" provision does not automatically preclude reliance because "an 'as is' provision in a real estate contract does not bar a buyer's claim based on fraud or intentional misrepresentation." *See Larson*, 379 F. Supp. 2d at 1156; *see also Osterhaus v. Toth*, 249 P.3d 888, 900 (Kan. 2011) ("But a contractual waiver does not necessarily bar claims such as fraudulent misrepresentation and breach of contract as a matter of law where a buyer's reasonable inspection prior to purchase did not reveal a seller's false representation and later defects are discovered.") The reasonableness of plaintiff's inspections is a question of fact and SMS and Sparks have not shown that plaintiff cannot prove any set of facts entitling them to relief. *See id.* at 1155.

Plaintiff did not waive SMS's contractual promise to convey merchantable fee simple title. Plaintiff claims that the waiver of SMS's disclosures was nullified when it swore that the property was free from encumbrances. Furthermore, plaintiff argues this waiver does not limit SMS and Sparks' obligation to disclose the easement once it was missing from the title commitment. Plaintiff alleges that it did not find the easement through a visual inspection and was justified on relying on the title search it contracted for to determine defects to the title before it closed on the land. "[W]hen a vendor or lessor has knowledge of a defect in property which is not within the fair and reasonable reach of the vendee or lessee and which he could not discover by the exercise of reasonable diligence, the silence and failure of the vendor or lessor to disclose the defect in the property constitute actionable fraudulent concealment. [Citation omitted.]" *Green*, 720 P.2d at 658.

SMS and Sparks claim that plaintiff failed to conduct even a cursory public records search, which caused the alleged harm. But SMS agreed to pay for a title insurance policy and deliver the title commitment to plaintiff. Aside from physical inspection and title work, the court is not aware of

-12-

Kansas authority stating that a plaintiff must get another title search done—independent from the title search it contracted for—in order to be found to have exercised due diligence in discovering defects. Furthermore, the Kansas Supreme Court has refused to follow *Black v. Black*, 68 P. 662, 666–67 (Kan. 1902), in some cases in which the plaintiff could not reasonably have been expected to check the public record. *Doll v. Chicago Title Ins. Co.*, 517 F. Supp. 2d 1273, 1279 (D. Kan. 2007). "Likewise, if a party be prevented by fraud from availing himself of the benefit of the record, or be led by such means to forego an investigation of the record, no one participating in the fraud can insist upon the enforcement of the duty to do so." *Hutto v. Knowlton*, 108 P. 825, 826 (Kan. 1910).

The court finds that plaintiff has stated a plausible claim that it justifiably relied on SMS's affidavit, Sparks' silence, and the absence of any note of the avigation easement in the title opinion, and then changed its position in reliance upon these facts. As a result, plaintiff arguably suffered actual damages, including: lost profits, loss of the value of the property, maintenance, development and financing expenses attributable to the property, and loss of chance to market the property as a result of SMS and Sparks' fraudulent concealment.

### C.     Statute of limitations

Plaintiff claims that it discovered the easement in May 2014, when a sale for a portion of the land did not occur due to discovery of the easement. Plaintiff further alleges that it discovered in May 2016 that SMS and Sparks had actual knowledge of the easement when they sold the land to plaintiff in 2007. Plaintiff filed the original petition in state court on October 1, 2015 and argues that it is timely.

Under Kansas law, an action for relief on the ground of fraud must be brought within two years. Kan. Stat. Ann. § 60-513(a)(3). But the cause of action shall not be deemed to have accrued until the fraud is discovered. *Id.*

SMS and Sparks argue that plaintiff's fraudulent concealment claim is untimely because Kansas imputes constructive knowledge (and therefore discovery) on plaintiff because the fraud could have been discovered by searching the public records. The court finds that plaintiff's cause of action is timely filed because it was not aware of the fraud until 2014.

In the alternative, even if plaintiff's case was filed beyond the two-year window, plaintiff has presented sufficient facts to warrant tolling of the two-year statute of limitations under the doctrine of equitable estoppel. Equitable estoppel applies if the defendant has induced the plaintiff to delay filing the action either through affirmative acts or through silence concerning material facts when under an affirmative duty to speak. *Zurn Constructors, Inc. v. B.F. Goodrich Co.*, 746 F. Supp. 1051, 1056 (D. Kan. 1990).

The court has found that plaintiff stated a plausible claim that SMS and Sparks had a duty to disclose the easement and failed to do so. Plaintiff has also explained why due diligence did not lead or could not have led it to the discovery of the easement in 2007. "Actual fraud in the technical sense is not required to create estoppel." *Id.* Therefore, the court finds that plaintiff has stated a plausible claim of equitable estoppel to toll the two-year statute of limitations.

**D. Conclusion**

Plaintiff has stated a plausible claim for fraudulent concealment against SMS and Sparks. "[L]iability for fraudulent concealment depends in large part on the buyer's inability to discover a defect with a reasonable inspection. *Larson*, 379 F. Supp. 2d at 1156. As a result, SMS and Sparks are not fraudulently joined and this court lacks subject matter jurisdiction because the parties are not diverse. *See Montano*, 2000 WL 525592 at * 2 (stating that remand is required if any one of the claims against the non-diverse defendant is possibly viable). The court will not address plaintiff's other claims.

**IT IS THEREFORE ORDERED** that plaintiff's motion to remand to state court (Doc. 20) is granted. The court lacks jurisdiction over plaintiff's claims because diversity is not complete under 28 U.S.C. §§ 1332(a) and 1441(b).

**IT IS FURTHER ORDERED** that defendants SMS and Sparks' Motion To Dismiss (Doc. 25) is denied without prejudice.  Plaintiff has presented a plausible claim against defendants.

Dated this 18th day of January, 2017, at Kansas City, Kansas.

s/ Carlos Murguia  
**CARLOS MURGUIA**  
**United States District Judge**
